**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

Civil Action No. 1:20-cv-2405-KLM

Deborah Laufer,
        Plaintiff,
v.

2500 ARAPAHOE ST LLC,
        Defendant(s).

_____

PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS

_____

Plaintiff, Deborah Laufer ("Plaintiff"), by and through undersigned counsel, hereby files her Response in Opposition to Defendant's Motion to Dismiss, and states as follows:

**I.      Introduction**

Plaintiff is a Florida resident and disabled person within the meaning of the Americans With Disabilities Act, 42 U.S.C. § 12181, et seq. ("ADA"). Defendant is a place of lodging that books rooms for its hotel through an online reservations service ("ORS") operated through multiple websites. (Hereinafter "websites," "online reservations systems" or "ORS".) Laufer Aff., para. 6, Exhibit A attached hereto.

The purpose of this ORS is so that Defendant can reach out and market to persons in their own homes all over the country, including Florida, and to solicit their patronage, provide them with information so that they can make a meaningful choice in planning trips, and, in some instances, book a room at the hotel. As such, the

Defendant's ORS is required to comply with the requirements of 28 C.F.R. Section 36.302(e)(1)(hereinafter the "Regulation"), by identifying and allowing for booking of accessible rooms and providing accurate and sufficient information as to whether all the features at the hotel are accessible.

On multiple occasions prior to the filing of this lawsuit, Plaintiff reviewed the ORS for Defendant's hotel and found that it did not comply with the Regulation. *Laufer Aff.*, para. 6. Plaintiff therefore filed the instant action for injunctive relief pursuant to the ADA. Plaintiff also has a system to ensure that she properly maintains standing. *Id*. at para. 8. She maintains a list of all hotels she has sued over ORS violations. *Id.* She goes through and updates this list constantly. *Id.* With respect to each hotel she sues or has sued, she revisits the hotel's ORS shortly after the complaint is filed. She also records the date when the ORS is required to be complaint and then revisits it. By this system, Plaintiff has already revisited the ORS for this hotel after having filed her Complaint. *Id.*

Defendant filed a motion to dismiss, claiming that Plaintiff has no rights unless she intended to book a room at the hotel. Defendant additionally seeks a stay of proceedings.

## II.    The Applicable Standard

A court "must convert a Rule 12(b)(1) motion to one under Rule 12(b)(6), or for [Rule 56] summary judgment, '"if the jurisdictional question is intertwined with the merits of the case."' *Franklin v. Sav. Corp. v. United States*, 180 F.3d 1124, 1129 (10th Cir. 1999); *Bell v. United States*, 127 F.3d 1226, 1228 (10th Cir. 1997); *Wheeler v.*

*Hurdman*, 825 F.2d 257, 259 (10th Cir. 1987). "When deciding whether jurisdiction is intertwined with the merits of a particular dispute, 'the underlying issue is whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim.'" *Davis ex rel. Davis v. United States*, 343 F.3d 1282, 1296 (10th Cir. 2003)(Hartz, J.)(quoting *Sizova v. Nat'l Inst. of Standards & Tech*., 282 F.3d 1320, 1324 (10th Cir. 2002).

Under Fed. R. Civ. P 12(b)(6), the allegations of the complaint must be taken as true. *Mobley v. McDormick*, 40 F.3d 337, 340 (10th Cir. 1994). Under the standard governing rule 56, a court cannot weigh the evidence, but can only assess the threshold issue whether a genuine issue exits as to material facts requiring a trial and must resolve all reasonable inferences and doubts in the favor of the non-moving party. *Begay v. Unites States*, 188 F.Supp.3d 1047, 1073-74 (D. N.M. 2016)(citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986); *Hunt v. Cromartie*, 526 U.S. 541, 550-55 (1999)

In the case at bar, Defendant is challenging whether Plaintiff suffered an injury. These issues are inextricably intertwined with the merits of her claims under 42 U.S.C. § 12182 and right to injunctive relief pursuant to 42 U.S.C. § 12188. As Plaintiff is supplementing her response with an affidavit, this Court must apply the standards of Rule 56.

### III.   Defendant's Theory Has Been Widely Rejected

Defendant ignores the overwhelming body of caselaw that hold that the law omits any requirement that the disabled plaintiff intend to book a room or visit the hotel. In

*Parks v. Richard*, 2020 U.S. Dist. Lexis 86790 (M.D. Fla. 2020), one court rejected the defendant's argument that the plaintiff needed to intend to book a room at the hotel. The court held that the:

> ADA claim is based upon [defendant's] website failing to identify the accessible features of the motel and its rooms, in violation of 28 C.F.R. § 36.302(e)(1)(ii). Therefore, the relevant 'future injury' inquiry relates to the motel's website and reservation system, rather than the motel's physical property." [Citation omitted.] While Parks may have never visited the motel, he visited its website and several third-party sites.

*Id*. at *7. In *Kennedy v. Gold Sun Hospitality, LLC*, 8:18-cv-842-T-33CPT, DE 23, at pp. 30-31, (M.D. Fla. June 18, 2018), another court rejected a physical nexus argument, holding that the plaintiff's injury occurred in comfort of her own home when she visited defendant's discriminatory hotel website. In *Kennedy v. Swagath Hospitality, LLC*, 0:19-cv-60583-DPG, DE 27 (S.D. Fla. 1/2/2020), another court rejected the defendant's physical nexus argument, stating:

> Plaintiff alleges that (1) she visited Defendant's website to ascertain whether it met the requirements of 28 C.F.R. § 36.302(e), (2) she intends to return to the website to test it for compliance and/or to reserve a guest room, and (3) Defendant's failure to comply with the Americans with Disabilities Act ("ADA") is ongoing and harmful to her..... Based on these allegations, the Court finds that Plaintiff has sufficiently alleged an injury-in-fact and an intent to the return to the website in the future.

In *Kennedy v. WGA*, 2:19-cv-0095-RWS, DE 16, p. 9 (N.D. Ga. 11/5/2019), another court rejected a defendant's physical nexus argument (filed at DE 5). The court stated: "[Defendant]'s argument [] centers on whether [plaintiff] suffered a concrete and

particularized injury only from visiting [the hotel's] website and not the physical premises. DE 16, at pp. 7-8. The court held that: "visiting the website suffices" and that "a plaintiff's inability to fully and effectively use an establishment's website constitutes an injury-in-fact." *Id*. at 9. The court further stated:

> [T]he Court finds that [plaintiff] has sufficiently alleged an injury-in-fact as a result of visiting Lakeside's deficient website under 28 C.F.R. § 36.302(e)(1)(ii). She visited the website to review and assess the accessible features of the Lakeside Inn. Because the website lacked the requisite information, she could not determine whether the physical location met her accessibility needs. Lakeside thus deprived her of the services otherwise available to the general public. These allegations are sufficient to establish a past injury for the purposes of standing.
> ....
> As with the past injury, the Court has previously held in a different context that alleging an intent to return to a website that threatens continued exposure to discrimination is sufficient to establish a threat of future injury. [Citation omitted.] Given the finding above that the alleged injury stems from [plaintiff's] visiting Lakeside's deficient website, the Court finds that the relevant inquiry is whether she is likely to return to the website again.

*Id*. at 9-10, 12. In *Poschmann v. Fountain TN, LLC*, 2019 U.S. Dist. Lexis 159417, **4-6 (M.D. Fla. 2019), another court rejected the physical nexus argument, holding that the plaintiff's ADA claim was based on the discriminatory website and, "[t]herefore, the relevant "future injury" inquiry relates to the motel's website and reservation system, rather than the motel's physical property." In *Poschmann v. Coral Reef of Key Biscayne Developers, Inc*., 2018 U.S. Dist. Lexis 87457. *8 (S.D. Fla. 2018), another court recognized the plaintiff's motive for returning to the discriminatory website as either " to determine whether the Hotel is accessible to him, and, if so, to reserve a room at the

Hotel **or** to test the Hotel's Website reservation system for its compliance with the ADA."
(Emphasis added.) By inclusion of the word "or" the court held that motive to review the
website solely to test it was sufficient and that intending to book a room is not required.
In *Kennedy v. Nila Investments, LLC*, 2:19-cv-90-LGW-BWC, DE 34 (S.D. Ga. 7/1/20),
another court granted default judgment after an evidentiary hearing, finding that the
plaintiff suffered discrimination when she visited the non-compliant ORS. The court
additionally found that the plaintiff had standing because she visited the ORS both
before and after the lawsuit was filed "for the purpose of assessing the accessibility
features of the property and to ascertain whether those sites met her accessibility needs
as well as the requirements of 28 C.F.R. § 36.302(e)(1)." *Id.* at p. 5. Other courts
rejected the defendants' arguments that intent to book a room or visit the hotel was
required. See *Kennedy v. New Yorker Hotel, Miami, LLC*, 0:18-cv-62897-WPD, DE 34
(6/6/19); *Kennedy v. Murnane, et al.*, 0:18-cv-63086-WPD, DE 10 (S.D. Fla. 3/5/19);
and *Kennedy v. Galleon Resort Condominium Assn, Inc., et al.*, 19-cv-62421-CMA, DE
52 (S.D. Fla. 1/28/20); *Kennedy v. Nisha, Inc.*, 8:20-cv-367-TPB-CPT, DE 34 (M.D. Fla.
9/17/20)(the weight of authority supports standing). Numerous other courts have held
that a disabled person suffers injury-in-fact when they visit a hotel's discriminatory
online reservations system. See *Kennedy v. Sai Ram Hotels, LLC*, 2019 U.S. Dist.
LEXIS 80111, *4-6 (M.D. Fla. 5/13/19), citing *Honeywell v. Harihar Inc.*, 2018 U.S. Dist.
LEXIS 203740,(M.D. Fla. Dec. 3, 2018); *Kennedy v. Floridian Hotel, Inc.*, 2018 U.S.
Dist. LEXIS 207984, at *9 (S.D. Fla. 2018); *Poschmann v. Liberty Inn Motel, LLC*, 2:18-
cv-14348, ECF No. 17 at 4-5 (S.D. Fla. Jan. 23, 2019); *Brooke v. Hotel Inv. Grp., Inc.*,

2017 U.S. Dist Lexis 150717, * 6 (D. Ariz. 2017); *Brooke v. Regency Inn-Downey, LLC*, 2017 U.S. Dist. Lexis 150716 (D. Ariz. 2017). This injury occurs in the comfort of the plaintiff's own home. *Gold Sun,* at pp. 30-31 (plaintiff's injury occurred in comfort of her own home when she visited defendant's discriminatory hotel website).

Numerous additional cases support the proposition that viewing a discriminatory commercial website constitutes injury-in-fact in the context of vision impairment based claims. See, e.g. *Carroll v. Fedfinancial Fed. Credit Union*, 324 F. Supp. 3d 658, 664 (E.D. Va. 2018); *Access Now, Inc. v. Otter Prods., LLC*, 280 F. Supp. 3d 287, 294 (D. Mass. 2017); *Jones v. Piedmont Plus Fed. Credit Union*, No. 1:17-CV-5214- RWS, 2018 WL 4694362, at *1 (N.D. Ga. Sept. 26, 2018); *Jones v. Family First Credit Union,* No. 1:17-CV-4592-SCJ, 2018 WL 5045231, at *4 (N.D. Ga. Aug. 6, 2018). For example, in *Camacho v. Vanderbilt Univ*., 2019 U.S. Dist. Lexis 209202, *30 (S.D.N.Y. 2019), one court rejected the notion that the plaintiff's possible visit to the subject property was at issue, holding:

> Plaintiff has claimed that he was denied access to the Website, not Defendant's physical location itself. Thus, Defendant [sic] need not have shown that he intended to "return" to Defendant's school in Nashville, Tennessee. He is only required to have established a reasonable inference that he intended to return to the Website...

Various courts have also rejected the applicably of the distance factor to cases involving either website or hotel discrimination. See, e.g. *Camacho*, 2019 U.S. Dist. Lexis 209202, *30 (holding that cases applying distance element to discrimination at physical properties are irrelevant to website discrimination claims); see also *Parks,* 2020 U.S. Dist. Lexis 86790 at *6; *Gold Sun Hospitality, LLC*, 8:18-cv-842, DE 23, pp. 30-31;

*Kennedy v. Sai Ram Hotels*, 2019 U.S. Dist. Lexis 80111, * 9 (M.D. Fla. 2019). Another court has held that the distance factor not applicable to commercial websites (in vision impaired discrimination) because (1) website cases do not involve physical locations; and (2) no travel is required. *Gniewkowski, et al v. Lettuce Entertain You Enterprises, Inc., et al.*, 251 F. Supp.3d 908, 920 (W.D. Pa. 2017). "The relevant 'future injury' inquiry relates to the [hotel's] website and reservation system, rather than the [hotel's] physical property. *Sai Ram*, 2019 U.S. Dist. Lexis 80111, at *11.[1]

## IV.    Testers Have Standing

Testers have standing under Title III of the ADA. *Colo. Cross-Disability Coalition v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1211 (10th Cir. 2014); *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1333-34 (11th Cir. 2013); *Civil Rights Educ. & Enforcement Ctr. v. Hosp. Properties Trust*, 867 F.3d 1093, 1101 (9th Cir. 2017). See also *Tandy v. City of Wichita*, 380 F3d 1277, 1285-90 (10th Cir. 2004)(recognizing tester standing to sue under Title II ADA). As such, the disabled person's motive is entirely irrelevant because all that matters is whether they encountered discrimination as defined by plain words the Statute. *Marod*, *passim*. Some courts have held that status a tester "plausibly increases the likelihood that she will visit the [defendant's] website again to test its ADA compliance." *Kennedy v. Sai Ram Hotels*, 2019 U.S. Dist. Lexis 80111, * 9 (M.D. Fla. 2019), citing *Gold Sun Hospitality, LLC*, No. 8:18-cv-842-T-

---

[1]The distance factor is also not applicable in the context of hotels because hotels are, by nature, established to accommodate travelers from afar. *Parks*, 2020 U.S. Dist. Lexis 86790 *6; *Bodley v. Plaza Management Corp*., 550 F.Supp.2d 1085, (D. Ariz. 2008); *D'Lil v. Best Western Encina Lodge & Suites*, 415 F. Supp.2d 1048, 1056 (C.D. Cal. 2006); *Access 4 All, Inc. V. Wintergreen Commercial P'ship*, 2005 WL 2989307, at *4 (N.D. Tex. Nov. 7, 2005); . *Access 4 All, Inc. v. 539 Absecon Blvd*., 2006 WL 1804578, at *3 (D.N.J. 2006). Indeed, at least one court has ruled that a plaintiff who lives ***too close*** to a hotel has no standing to sue for compliance. See *Access 4 All, Inc. v. Thirty East 30th Street, LLC*, 1:04-Civ-3683, DE 36, at 17 (S.D. N.Y. 12/11/06).

33CPT, DE 23, pp. 31-32. See also *Access 4 All, Inc. v. Absecon Hospitality Corp.*, 2006 WL 3109966, \*17 (D.N.J. 2006). *Marod*, 733 F.3d at 1336 (explaining that plaintiff's status as a tester indicated that he would revisit the property many times and therefore tended to show a real and immediate threat of future injury). Moreover, as the Eleventh Circuit explained, "[i]t is not unprecedented in this country for advocacy groups and individual members of advocacy groups to find it necessary to file a long trail of lawsuits in federal courts to enforce legal and civil rights." *Marod*, 733 F.3d at 1326. The entire purpose of the ADA and its fee shifting provision was to eradicate discrimination against disabled persons by encouraging individuals to act as private attorneys general to actively enforce the provisions of these civil rights statutes. See *Hensley v. Eckerhart*, 461 U.S. 424, 445 (1983) ("All of these civil rights laws depend heavily upon private enforcement..."); *Bruce v. City of Gainesville*, 177 F.3d 949, 952 (11th Cir. 1999)(applying to the ADA and stating "the enforcement of civil rights statutes by plaintiffs as private attorneys general is an important part of the underlying policy behind the law."); *Marod*, 733 F.3d at 1326 ("It is not unprecedented in this country for advocacy groups and individual members of advocacy groups to find it necessary to file a long trail of lawsuits in federal courts to enforce legal and civil rights). Indeed, if it were not for this Plaintiff, Defendant would be free to discriminate against disabled persons.

## V.     The Rules Of Statutory Construction Prohibit The Imposition Of A Physical Nexus Requirement

Under the plain meaning rule of statutory construction, a court must give effect to that language and refrain from further statutory interpretation. *In re. Foah*, 2012

Bankr. Lexis 1206, n. 7 (B.R. N.M. 2012). The rule prohibits a court from abandoning the plain language of a statute unless it is ambiguous. *In re Spade*, 258 B.R. 221, 228 (B.R. Colo. 2001). "As with any question of statutory interpretation, our analysis begins with the plain language of the statute. ... It is well established that, when the statutory language is plain, we must enforce it according to its terms." *Jiminez v. Quarterman*, 555 U.S. 113, 118 (2009)(citations omitted). If the language is unambiguous, no further inquiry is necessary. *Clark v. Astrue*, 602 F.3d 140, 147 (2d Cir. 2010). A court cannot rewrite a statute to reflect a meaning it deems more desirable. *Ali v. Fed. Bureau of Prisons, 552 U.S. 214, 228 (2008)*. In the case at bar, the Defendant essentially requests that this Court ignore the plain and unambiguous words of the Statute and Regulation and judicially add an intent or physical nexus requirement, in violation of the applicable rules of statutory construction.     It is highly significant, and dispositive, that other subsections contain restrictive language which is conspicuously absent from the subsections and Regulation that govern an ORS.

> "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."

*INS v. Cardoza—Fonseca*, 480 U.S. 421, 432 (1987). Although not an ADA case, the Supreme Court's decision in *Bates v. United States*, 522 U.S. 23 (1997) is helpful. There, the Court analyzed whether a lower court could properly impose an intent requirement into a criminal statute and held that because such a requirement was

present in a different subsection, but missing from the one at issue, that it could not be judicially imposed. *Id.* at 29-30.

Plaintiff's claims are based on the following: 42 U.S.C. § 12188(a) provides for injunctive relief to "any person who is being subjected to discrimination on the basis of disability in violation of this subchapter..." 42 U.S.C. § 12182(a) provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the ... services ... of any place of public accommodation.... 42 U.S.C. § 12182(b)(2)(A) provides that the definition of "discrimination" includes: "a failure to make reasonable modifications in policies, practices, or procedures ... to afford such ... services ... to individuals with disabilities...." 42 U.S.C. § 12182(b)(2)(A)(ii). Pursuant this latter Subsection, the Department Of Justice ("DOJ") promulgated the Regulation, which provides, *inter alia*:

> (1) Reservations made by places of lodging. A public accommodation that owns, leases (or leases to), or operates a place of lodging shall, with respect to reservations made by any means, including by telephone, in-person, or through a third party -
> (i) Modify its policies, practices, or procedures to ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms;
> (ii) Identify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs.......

The Statute and Regulation[2] are directly on point and unambiguously spell out all

[2]Because Congress explicitly authorized the Attorney General to promulgate regulations under the ADA, the regulations must be given legislative and, hence, controlling weight unless they are arbitrary, capricious or plainly contrary to Statute." *Kennedy v. Gold Sun Hospitality, LLC,* 8:18-cv-842, Hearing Transcript at 29-30 (M.D. Fla. 6/18/18). See also *Poschmann v. Coral Reef of Key Biscayne Developers, Inc.*, 2018 U.S. Dist. LEXIS 87457 *6 (S.D. Fla. May 23, 2018)(recognizing that the DOJ promulgated the Regulation to carry out the provisions of the ADA). A regulation promulgated pursuant to Congressional

the elements of a cause of action. Failure of an online reservations system to comply with the requirements of the Regulation constitutes a failure to comply with 42 U.S.C. § 12182(b)(2)(A)(ii). This qualifies as "discrimination" and is thus a violation of 42 U.S.C. § 12182(a) and is thus fully actionable without more required.

A website is a "service" of a place of public accommodation. *Haynes v. Dunkin Donuts, LLC*, 741 Fed. Appx. 752, 754 (11th Cir. 2018)(unpublished)(describing a commercial website as a "service" of a place of public accommodation); *Nat'l Fed'n Of The Blind v. Target Corp.*, 452 F. Supp. 946, 953 (N.D. Cal. 2006)(same). 42 U.S.C. § 12182(a) clearly spells out a complete cause of action as follows: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the ... services ... of any place of public accommodation..." Because the websites are a "service," all that is required is that a disabled person be deprived of full and equal enjoyment of this "service". Once that occurs, all the elements are satisfied to establish a cause of action. Conspicuously absent from the Regulation or the Statute is any requirement that the disabled person must additionally intend to be a customer or, in this case, book a room and stay at the hotel as a requirement for a cause of action.

The rules of statutory construction mandate a finding that a physical nexus requirement can NOT be imposed because any language expressing this requirement is conspicuously missing from the above cited Regulation and Statutory subsections. As set forth in the following cases, the imposition of substantially similar requirements have been extensively considered and rejected because they were noted to be present in

_____

authority must be given controlling weight. *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 843-44 (1984).

other statutes or subsections, but absent from the applicable sections or subsections governing the claims before the courts reviewing them.

In *Marod*, the Eleventh Circuit held that a disabled tester has standing to pursue a Title III ADA case for violations of 42 U.S.C. § 12182. Generally, it held that a plaintiff's motive and intent are entirely irrelevant and that there is no requirement that they be a client or customer or a bona fide customer. In this regard, the Eleventh Circuit relied on Supreme Court cases and applied the rules of statutory construction. Both *Marod*, 733 F.3d at 1333, and *PGA Tour v. Martin*, 532 U.S. 661, 678-79 (2001), held that an ADA plaintiff suing under 42 U.S.C. § 12182(a) does not have to be a "client or customer" of the defendant. In both cases, the Eleventh Circuit and Supreme Court noted that a **different** subsection of the same statute contained a "client or customer" requirement that was not present in the plain language of Subsection 12182(a). Therefore, both courts held, the requirement could not be applied. Because the "client or customer" language was present in one subsection, but missing from the subsection that governed, the requirement could not be imposed. In *PGA Tour*, 532 U.S. at 678-79, the defendant had argued that the plaintiff had no standing to sue unless he was a "client or customer" of the place of public accommodation. The Court rejected this notion. As the Court observed, the Statute's "client or customer" limitation was set forth in only one Subsection of the Statute but missing from others that governed the case before it. Specifically, § 12182(b)(1)(A)(iv) contained the "clients or customers" limitation. However, the Subsection at issue in *PGA Tour*, namely 12182(a)[3] **did NOT**

---

[3] Subsection 12182(a) is the same Subsection that governs the instant action.

contain this limiting language. Therefore, the Court stated that: "clause (iv) is not literally applicable to Title III's general rule prohibiting discrimination against disabled individuals. Title III's broad general rule contains no express "clients or customers" limitation..." *PGA Tour*, 532 U.S. at 679 (citing Subsection 12182(a)). Therefore, as the Supreme Court observed, limiting language contained in one Subsection of Title III cannot be applied to other Subsections of the same statute where that language is missing. This "client or customer" analysis regarding was similarly applied by the *Marod* Court when it held that testers have standing, that they do not need to be a client or customer, and that their motive is irrelevant. 733 F.3d at 1333-34. However, the *Marod* Court additionally relied heavily on other similar opinions involving different language and applying the rules of statutory construction.        In *Marod*, the Eleventh Circuit considered other cases applying other civil rights statutes. Among these was *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), discussed by the *Marod* Court at 733 F.3d at 1330. As noted by *Marod* regarding *Havens*:

> The Supreme Court concluded that a black tester who was misinformed about the availability of a rental property had alleged sufficient injury-in-fact to support standing to sue under § 804(d) of the FHA. Id. at 374, 102 S. Ct. at 1121-22. The plaintiff-tester in Havens Realty never intended to rent the apartment; rather, his sole purpose was to determine whether the defendant engaged in unlawful practices. *Id*.
>
>         In considering the tester's standing, the Supreme Court in Havens Realty explained that the "'the actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Id. at 373, 102 S. Ct. at 1121* (alterations adopted) (quoting *Warth v. Seldin, 422 U.S. 490, 500, 95 S. Ct. 2197, 2206, 45 L. Ed. 2d 343 (1975))*; see also *Linda R.S. v. Richard D., 410 U.S. 614, 617 n.3, 93 S. Ct. 1146, 1148 n.3, 35 L. Ed. 2d 536 (1973)* ("Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute."). The statutory language of the relevant FHA provision, § 804(d), was therefore critical to the Supreme Court's decision. *Havens Realty, 455 U.S. at*

*373, 102 S. Ct. at 1121.*
....
The Supreme Court therefore concluded that § 804(d) "establishes an enforceable right to **truthful information** concerning the availability of housing" and "[a] tester who has been the object of a misrepresentation made unlawful under § 804(d) has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing to maintain a claim for damages under the Act's provisions." [Citation omitted.]

      The Supreme Court admonished "[t]hat the tester may have approached the real estate agent fully expecting that he would receive false information, and **without any intention of buying or renting a home**, does not negate the simple fact of injury within the meaning of § 804(d)." *Id. at 374*; *102 S. Ct. at 1121*. The Supreme Court explained that "[w]hereas Congress, in prohibiting discriminatory refusals to sell or rent in § 804(a) of the Act, *42 U.S.C. § 3604(a)*, required that there be a 'bona fide offer' to rent or purchase, Congress plainly omitted any such requirement insofar as it banned discriminatory representations in § 804(d)." *Havens Realty, 455 U.S. at 374*; *102 S. Ct. at 1122*.

*Marod*, 733 F.3d at 1330-31 (emphasis added).

The case at bar is substantially similar to *Havens Realty*.[4] Under *Havens Realty*, the plain language of the statute gave a right of action to a civil rights tester who encountered **discriminatory information** about an apartment **even though they did not intend to rent the apartment**. In other words, it was not necessary that the person intended to rent or visit the physical location. Rather, encountering the discriminatory information was sufficient. In *Marod*, the Court also noted that other anti-discrimination statutes required that a plaintiff have "bona fide" status. *Marod*, 733 F.3d at 1333. Because the bona fide requirement was contained in other statutes, but not included in the applicable provisions of 42 U.S.C. 12182, its requirement could not be imposed. *Id*.

In *Havens Realty*, the Supreme Court applied the same rule of statutory

---

[4]*Havens Realty* was decided years before Congress drafted and enacted the ADA, and therefore, by the inclusion of substantially similar language, Congress certainly intended *Havens Realty*'s broad applications to govern a plaintiff's rights the ADA. This is consistent with Congress' stated purpose to "provide a clear and comprehensive national mandate for the elimination of discrimination" and "provide, clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities[.] 42 U.S.C. Section 12101(b).

construction, noting that a requirement that a plaintiff be a "bona fide patron" was included in one subsection of the applicable statute, but missing from the subsection that applied to the case before it. Therefore, the bona fide requirement did not apply. *Havens Realty*, 455 U.S. at 374.

In *Tandy*, 380 F3d at 1290, the Tenth Circuit applied *Havens Realty* to a Title II ADA action as follows:

> [Plaintiff] has shown that her injury is traceable to the action she seeks to have adjudicated. The action she seeks to have adjudicated is Wichita Transit's alleged failure to provide her with adequate information concerning its transportation services.... [Plaintiff's] affidavit suffices, at this stage of litigation, to show that she could not obtain any information from the TDD line. [Plaintiff's] injury is therefore traceable to Wichita Transit's allegedly wrongful failure to provide her with adequate information concerning its transportation services. This injury is redressable by compensatory or nominal damages. Therefore, Jeffries has standing to sue for damages.

> In *Marod*, the Court stated:

> These examples illustrate that Congress has said so expressly when it wants to limit the class of people protected by anti-discrimination statutes to only clients or customers or to people of bona fide status. But Congress expressed no such limitation in the parts of Title III that are relevant to Plaintiff Houston's lawsuit. This absence of legislative language restricts our interpretation, as we are "not allowed to add or subtract words from a statute."

733 F.3d at 1333-34. The ability or inability to obtain information in violation of a statute was recognized as an actionable injury by the Supreme Court in *Federal Election Commission v. Akins*, 524 U.S. 11, 20-25 (1998), which ruled that a group of voters' "inability to obtain information" that Congress had decided to make public is a sufficient injury in fact to satisfy Article III. In this regard the Supreme Court stated:

> Indeed, this Court has previously held that a plaintiff suffers an "injury in fact" when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute. *Public Citizen v. Department of Justice*, 491 U.S. 440, 449,

105 L. Ed. 2d 377, 109 S. Ct. 2558 (1989) (failure to obtain information subject to disclosure under Federal Advisory Committee Act "constitutes a sufficiently distinct injury to provide standing to sue").

524 U.S. at 21. Numerous Circuit Courts have followed *Havens Realty*, 455 U.S. 363 (1982) in recognizing informational injury. *Ragin v. Harry Maclowe Real Estate* Co., 6 F.3d 898, 904 (2nd Cir. 1993)(black testers had standing to sue over discriminatory advertisement even though they had no intention of renting apartment); *Bensman v. United States Forest Serv.*, 408 F.3d 945, 955-57 (7th Cir. 2005)(surveying cases and statutes where informational injury is recognized and actionable); *Watts v. Boyd Properties*, 758 F.2d 1482 (11th Cir. 1985)(tester who had no intention of renting apartment had standing to sue for receiving misleading information from defendant about apartment availability), *Carter v. Welles-Bowen Realty, Inc.* 553 F.3d 979, 989 (6th Cir. 2009)(discussing informational injury); *Wilderness Soc'y v. Rey*, 622 F.3d 1251, 1258-60 (9th Cir. 2010)(discussing informational injury); *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 273-74 (3rd Cir. 2016)(recognizing intangible harm as including unlawful denial of access to information subject to disclosure).

Under the above cited cases, an ADA plaintiff does not have to be a client or customer, or a bona fide customer and his motive or intent are entirely irrelevant. All that is required is that they encounter discrimination within the plain meaning of the words of the statute. This includes discrimination in the form of information without any visit or intent to visit the property which is the subject of that information. There is no additional requirement that they intend to use or visit the physical property unless the applicable statutory provisions expressly say so. Thus, there no room left to reach an

interpretation that a disabled plaintiff must intend to book a room at a hotel, or actually visit the hotel, before they can have a cause of action for a discriminatory online reservations system. Any language imposing such a requirement is completely absent. Neither the general provision of 42 U.S.C. § 12182(a), the definition of "discrimination" under 42 U.S.C. § 12182(b)(2)(A)(ii), nor the Regulation contain any such requirement. To the contrary, failure by the Defendant to make its online reservations system compliant with the Regulation constitutes "discrimination" within the meaning of Subsection 12182(b)(2)(A)(ii)**.** This then is prohibited by the general provision of Subsection 12182(a) because the disabled person is deprived of full and equal access to a service. It does not then matter whether an ADA tester intended to do anything more than what is set forth in the statute. The words "no individual shall be discriminated against..." means that **any** disabled person who encounters a discriminatory service has a cause of action, regardless of whether they are a tester and regardless of their intent. Moreover, Subsection 12188's granting of injunctive relief to "any person who is being subjected to discrimination" cannot be interpreted to impose any requirements that would reduce "any person" to "only some people".

To the extent there is any room for doubt, there is in fact **another** subsection of the Statute which **DOES** contain language imposing a physical nexus requirement. 42 U.S.C. § 12182(b)(2)(A)(i) prohibits:

> "the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities *from* fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations..." (Emphasis added.)

In that Subsection, the word "from" is critical because its insertion in the

Subsection means that a disabled person's encounter with discriminatory eligibility criteria by itself does not give rise to a cause of action unless and until that criteria prevents them **"from"** full and equal access to goods or services. This word, however, is conspicuously absent from either the Statute's Subsections or the Regulation that govern online reservations systems. Because an ORS is a "service" of the place of public accommodation, and failure to comply with the Regulation qualifies as "discrimination," then nothing more is necessary. When a disabled person encounters a non-compliant ORS, he has been "discriminated against on the basis of disability in the full and equal enjoyment of ... services, ..., privileges, advantages..." Thus, the plaintiff has standing and there is no additional requirement that they visit the hotel or intend to book a room. In short, the Plaintiff's encounter with the discriminatory website IS the injury.

The Supreme Court's recent decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) supports this conclusion. In *Spokeo*, the Supreme Court held that improper information which violated the Fair Credit Reporting Act did not, by itself, constitute injury[5]. However, the *Spokeo* Court specifically recognized the existence of statutes which provide that the dissemination of improper information constitutes an injury with nothing more required. In this regard, the *Spokeo* Court stated:

> Just as the common law permitted suit in such instances, the violation of a procedural right granted by statute can be sufficient in some circumstances to

---

[5]It should be noted that the Fair Credit Reporting Act was intended to protect one class of persons, debtors, from incorrect information provided to a different class of persons, creditors. By contrast, the governing provisions in the instant case create a legal obligation for hotels to provide information to disabled persons.

constitute injury in fact. In other words, a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified. See *Federal Election Comm'n v. Akins*, 524 U. S. 11, 20-25, [] (1998) (confirming that a group of voters' "inability to obtain information" that Congress had decided to make public is a sufficient injury in fact to satisfy Article III); *Public Citizen v. Department of Justice*, 491 U. S. 440, 449, [] (1989) (holding that two advocacy organizations' failure to obtain information subject to disclosure under the Federal Advisory Committee Act "constitutes a sufficiently distinct injury to provide standing to sue").

*Spokeo,* 136 S.Ct. At 1549-50. In the *Akins* decision referenced by *Spokeo*, the Supreme Court, in turn, referenced *Havens Realty* as follows:

Indeed, this Court has previously held that a plaintiff suffers an "injury in fact" when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute..... See also *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-374[] (1982) (deprivation of information about housing availability constitutes "specific injury" permitting standing).

*Akins*, 524 U.S. at 21.

Thus, the *Spokeo* Court neither overturned nor narrowed *Havens Realty*, but instead acknowledged the body of law to which *Havens Realty* belongs.[6] Indeed, the concurring and dissenting opinions in *Spokeo* both expressly recognized *Havens Realty*. *Spokeo,* 136 S.Ct. at 1553, 1555 (Thomas J., Concurring)(Ginsburg, J. Dissenting). In *Macy v.*

---

[6]In *Marod*, passim, this Circuit Court found substantial similarities between the ADA and the statute at issue in *Havens Realty* with regard to the issue of standing and the lack of any motive requirement of the individual plaintiff.

*GC Servs., L.P.*, 897 F.3d 747, 754 (6ᵗʰ Cir. 2018), the Sixth Circuit noted that "[a] long line of Supreme Court precedent, cited approvingly in *Spokeo*, supports the conclusion that *Spokeo* did not mean to disturb the Court's prior opinions recognizing that a direct violation of a specific statutory interest recognized by Congress, standing alone, may constitute a concrete injury without the need to allege any additional harm."

Defendant cites *Griffin v. Dep't of Labor Fed. Credit Union*, 912 F.3d 649 (4th Cir. 2019). However, the Defendant completely overlooks the disclaimer set forth in *Griffin* that its holding was confined to circumstances where the plaintiff was legally barred from becoming a member of the defendant's exclusive credit union. *Id*., at 653. The court specifically stated that it was not considering "the rights generally of people with disabilities to sue for Internet-based harms under the ADA". 912 F.2d at 653. The context in which *Griffin* fits in with the law is illustrated by the Seventh Circuit's opinion in *Carello v. Aurora Policemen Credit Union*, 930 F. 3d 830, 832-33 (7th Cir. 2019), which followed and expressly stated its holding was "no broader" than *Griffin*. Significantly, the *Carello* Court distinguished itself from the sorts of websites applicable to the case at bar, stating: "Carello does not complain that the Credit **Union withheld information**...." *Id*. at 835 (emphasis added). Thus, the *Carello* Court expressly distinguished the statute at issue therein with the type of statute and regulation at issue herein - which prohibit the withholding of information. Indeed, the *Carello* Court recognized that informational injury is actionable when the defendant fails to provide information to a plaintiff that a law entitles him to obtain and review for some substantive purpose. *Id*. at 835. "Once that occurs, there is no additional requirement that the

plaintiff suffer any additional harm beyond his or her failure to receive the information that the law renders subject to disclosure. *Id.*, citing *Spokeo*. Specifically, the *Carello* Court stated:

> An informational injury occurs when the defendant refuses to provide the plaintiff with information that a law—typically, a sunshine law—entitles him to obtain and review for some substantive purpose. See, e.g., *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 21, 24-25, 118 S. Ct. 1777, 141 L. Ed. 2d 10 (1998) (concluding that voters' inability to obtain information subject to disclosure under the Federal Election Campaign Act of 1971 is a sufficiently concrete injury); *Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 449, 109 S. Ct. 2558, 105 L. Ed. 2d 377 (1989) (explaining that, to satisfy Article III's injury requirement, advocacy organizations requesting information subject to disclosure under the Federal Advisory Committee Act need only show "that they sought and were denied" the information); *Casillas [v. Madison Ave., Assoc.*, 926 F.3d 329,] 337-38 [(7th Cir. 2019)] ("[Akins and Public Citizen] hold that the denial of information subject to public disclosure is one of the intangible harms that Congress has the power to make legally cognizable." (emphasis omitted)). In such cases, a plaintiff "need not allege any additional harm beyond" his failure to receive information that the law renders subject to disclosure. *Spokeo*, 136 S. Ct. at 1549.

In this regard, *Carello* squarely establishes that this Court must recognize Plaintiff's right to sue. The Regulation was promulgated for the purpose of providing a right of this plaintiff and other disabled persons to the right to book a room and further requiring the provision of specific information regarding accessibility at a hotel. Application of this doctrine is illustrated in *Cooper v. Stephen Bruce & Assocs.*, 2019 U.S. Dist Lexis 1013 (W.D. Ok. 2019). In that case, the court considered *Spokeo* and held that the plaintiff's receipt of misleading information was sufficient injury, with nothing additional required, because such was a violation of the Fair Debt Collection Practices Act.

Defendant also cites *Nicklaw v. CitiMortgate, Inc.*, 855 F.3d 1265 (11th Cir. 2017), and *Thole v. U.S. Bank N.A.*, 140 S.Ct. 1615 (2020). However, neither of these cases

involved any legal obligation on the defendant's part to provide any information to the plaintiff.

## VI. Defendant's Reliance on Arpan And Hernandez Is Misplaced

Defendant also cites *Laufer v. Arpan, LLC*, 1:19-cv-200-AW-GRJ, DE 45 (N.D. Fla. 9/25/20), and *Hernandez v. Caesars License Co., LLC,* 2019 U.S. Dist. LEXIS 172456, * 10 (N.J. Dist. 2019). These rulings are substantially flawed. Both opinions grossly misinterpreted or ignored binding precedent and judicially re-wrote the statute to change its plain meaning. First, both opinions held that *Havens Realty* was inapplicable, reasoning that *Havens Realty* was about intentional discrimination and differential treatment and NOT about informational injury. This is completely contrary to all prevailing interpretation, including the plain language found in the *Havens Realty* opinion. See *Havens Realty*, 455 U.S. at 373-74 (deprivation of plaintiffs' right to truthful information is actionable injury); *Akins*, 524 U.S. at 21(citing *Havens Realty* on the point that "[i]ndeed, this Court has previously held that a plaintiff suffers an "injury in fact" when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute..... ). This is also inconsistent with all the other authorities cited on this point, *supra*.

Second, the *Arpan* court also held that *Havens Realty*'s opinion regarding the standing of the individual plaintiffs was "not essential" because the organizational plaintiff's standing had also been recognized. There is nothing in *Havens Realty's* opinion that supports this interpretation, and the *Arpan* court violated its mandates by electing to ignore the Supreme Court. To the contrary, the *Havens Realty* Court

expressly recognized the right of the individual plaintiffs to sue because the statute gave this right to "any person". The *Havens Realty* Court further recognized that: "Congress has thus conferred on all "persons" a legal right to truthful information about *available housing*." *Id*., at 373-74. Indeed, the Court held that two plaintiffs had standing because they received untruthful information and a third plaintiff lacked standing because he did NOT receive untruthful information. *Id*., at 374.

The *Arpan* court also cited *Spokeo* and *Carello*, but completely overlooked the passages in both opinions that expressly recognized that injury occurs where a defendant violates a legal obligation to provide information to the plaintiff. The *Arpan* court also ignored the express disclaimers in both the *Griffin* and *Carello* opinions that their holdings were strictly limited to instances where the plaintiff was legally barred from ever availing himself of the defendants' services and where they declined to address the rights generally of disabled persons to sue for website discrimination.

Both the *Arpan* and *Hernandez* courts ignored the rules of statutory construction and the plain language of the statute. For example, the *Arpan* court cited the statute only with respect to its reference to a facility. In this regard, the *Arpan* court failed to acknowledge that the words "services" and "or" are also unambiguously contained in 42 U.S.C. § 12182(a), failed to note that 42 U.S.C. § 12182(b)(2)(A) defines "discrimination" as a failure to comply with any of its subsections, that failure to comply with the Regulation is a violation of subsection (ii), and that 42 U.S.C. § 12188 provides remedies for "any person who is being subjected to discrimination..."

The *Hernandez* court cited two other court holdings in support of its proposition

that intent to book a room is required. However, neither opinion stands for such a holding. One case cited by the *Hernandez* Court is *Juscinska v. Paper Factory Hotel, LLC*, 2019 U.S. Dist. Lexis 92550 (S.D.N.Y. 2019). However, the *Juscinska* court only noted that the plaintiff had the intention of booking a room. It never *held* that such an intent was required. Noting that the plaintiff intended to book a room is far different from holding that this is a requirement of the law.

The second case cited by the *Hernandez* Court was *Poschmann v. Coral Reef Of Key Biscayne Developers, Inc*., 2018 U.S. Dist. Lexis 87457 (S.D. Fla. May 23, 2018). However, the *Poschmann* decision stated that solely testing a website system for compliance satisfies standing. *Poschmann*, 2018 U.S. Dist. Lexis 87457 at *8 ("Plaintiff intends to return to the Website within thirty days to determine whether the Hotel is accessible to him, and, if so, to reserve a room at the Hotel **_or_ to test the Hotel's Website reservation system for its compliance with the ADA**.")(emphasis added). By this language, the *Poschmann* opinion held the exact opposite of what the *Hernandez* court stated. In sum, the *Hernandez* decision is entirely founded on its own misreading of other cases.

The *Arpan* court also held that the plaintiff had no right to sue because the same discriminatory ORS was equally viewable to both disabled and non-disabled persons alike. This is analogous to holding that a disabled person has no right to sue over a lack of handicap parking spaces or restroom grab bars because non-disabled persons would observe the same conditions. The difference is that whereas a hotel has no legal obligation to provide accessibility information to non-disabled persons, the Regulation

and Statute create such a legal obligation for the benefit of disabled persons. A non-disabled plaintiff would have no right to sue unless they suffered some additional injury (as discussed in *Spokeo*), but a disabled plaintiff would have a direct right to sue with no additional injury required (as recognized in *Spokeo*).

Lastly, the *Arpan* court held that the plaintiff could have made up for the hotel's discriminatory online reservation by calling the hotel. This has been widely rejected because it is not in the same manner as that offered to non-disabled persons and fails to comply with the express terms of the Regulation. See *Coral Reef Of Key Biscayne Developers, Inc*., 2018 U.S. Dist. Lexis 87457, ** 10-11; *Juscinska v. Paper Factory Hotel, LLC*, 2019 U.S. Dist. Lexis 92550 **9-10 (S.D.N.Y. 2019)(ability to telephone or email hotel is not "same manner" and therefore not a viable defense).

### VII.   Plaintiff Has Established Intent To Return

Various courts have held that status a tester "plausibly increases the likelihood that he or she will visit the [defendant's] website again to test its ADA compliance." *Kennedy v. Sai Ram Hotels*, 2019 U.S. Dist. Lexis 80111, * 9 (M.D. Fla. 2019), citing *Gold Sun Hospitality, LLC*, No. 8:18-cv-842-T-33CPT, DE 23, pp. 31-32. See also *Access 4 All, Inc. v. Absecon Hospitality Corp.*, 2006 WL 3109966, *17 (D.N.J. 2006). *Marod*, 733 F.3d at 1336 (explaining that plaintiff's status as a tester indicated that he would revisit the property many times and therefore tended to show a real and immediate threat of future injury).

In cases such as *Juscinska*, which discuss a plaintiff's intent to go to the hotel, such discussion is typically in the context of the court's assessment of the plausibility

that the plaintiff would return to the website. For instance, in *Poschmann*, 2018 U.S.

Dist. Lexis 87457 at *8, the court held that returning to the website to book a room is

one valid reason and checking it for compliance with the Regulation is another.

In *Camacho*, the defendant had challenged plaintiff's intent on the basis that he

had filed 50 similar complaints regarding the websites of schools all over the country.

2019 U.S. Dist. Lexis 209202, at *29. The court addressed this argument as follows:

> Defendant notes that Plaintiff's allegation that he "intends to visit Defendant's school in the near future if he could visit their website" is present in many, if not all, of the other complaints. []. From this, Defendant urges the Court to intuit that this allegation, as it appears in the Second Amended Complaint, should be discredited.[]. If Plaintiff were to visit each of the schools named in those complaints, he would be forced to travel to 42 cities across 19 states. []. Doubting the feasibility of such an expansive college tour, Defendant argues that the Second Amended Complaint does not adequately plead an intent to visit Defendant's school, and thus has not alleged facts that make it "reasonable to infer that Plaintiff's expressed intent to return to the Property is likely to materialize into fact sometime in the future." []
> Defendant's argument, built around citations to cases involving ADA claims relating to access to physical locations, misses the mark. Plaintiff has claimed that he was denied access to the Website, not Defendant's physical location itself. Thus, Defendant [sic] need not have shown that he intended to "return" to Defendant's school in Nashville, Tennessee. He is only required to have established a reasonable inference that he intended to return to the Website, and the Court has found that this requirement is met. To the extent it is relevant, Plaintiff has also clarified that he does not intend to visit each of the schools against which he has filed complaints. [] Rather, he wishes to visit each of the schools' websites, learn more about them, and then make an informed choice regarding which schools it would be worth visiting in person.[]. The Court does not doubt that it would be plausible for Plaintiff to visit the websites of all 50 schools, if they were accessible.

*Id*. at. ** 29-31. Thus, regardless of whether the plaintiff intends to visit the subject

property, the real issue is whether the plaintiff intends to visit the website.

Critically, in this case, the Plaintiff has a system whereby she makes sure she

visits the ORS in each case shortly after the respective complaint is filed, then again

when the defendant is required to bring its ORS into compliance with the law. *Id*. Thus, she insures that she either will again suffer injury if the defendant does not comply with the law, or will benefit if the defendant does indeed comply. Under Parks, 2020 U.S. Dist. Lexis 86790, at *7, this suffices to establish standing. Moreover, not only did this Plaintiff visit the hotel's discriminatory online reservations system multiple times before she filed suit, but she has visited it again since filing suit, pursuant to her system. Thus, Laufer proved to be true to her word when she averred that she intended to return to the websites soon. At least two courts have held that post-complaint visits establish standing. See *Payne v. Boston Market Corp*., E.D. N.C. 5:12-cv-354, DE 16 (3/12/13); *Kennedy v. Omega Gas*, 9:17-cv-80103-RLR, DE 60, pp. 6-7 (S.D. Fla. 8/30/17).

### VIII. Plaintiff Does Intend To Visit Colorado

Even though such is not necessary for purposes of standing, Plaintiff does indeed intend to visit Colorado as soon as the Covid crisis abates. Laufer Aff., para. 5. Significantly, her daughter lives in Colorado and Laufer has visited her many times, including once a year. *Id*. She travels throughout the State, intends to do so in her next trip, and must stay in area hotels. However, because this Defendant and so many others fail to comply with the law, Plaintiff lacks the information she requires to make a meaningful choice. *Id.*

### IX. Defendant's Motion To Stay Must Be Denied

The Defendant in this case seeks to have all of Plaintiff's cases consolidated, the Court to order Plaintiff to file standing memoranda in each case, and to stay all proceedings until a ruling is issued regarding her standing. In doing so, Defendant

presumes to interfere with other court proceedings to which this Defendant has no interest. Although Defendant cites cases in which other courts have required standing briefs (i.e. *Laxmi*), <u>*none of those courts*</u> has ever issued any ruling as to whether Laufer has standing. Rather, the standing issue in those cases has languished for many months without resolution. Defendant also cites no cases (and undersigned counsel is unaware of any cases) in which *any* court *anywhere* has ever consolidated ADA cases - either for website or physical property violations. Indeed, doing so would be impossible, because every property is different, their online reservations services are different, their ADA conditions are different, and the kinds of information they are required to post on their websites are different.

Stays of proceedings are improper pending motions to dismiss based on jurisdictional challenges. In *De Baca v. United States*, 403 F.Supp.3d 1098, 1128 (D.N.M. 2019), it was held that courts generally hesitate to stay discovery (pending a motion to dismiss) unless both parties agree. When a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion and a refusal to grant discovery constitutes an abuse of discretion if the denial results in prejudice to a litigant. *Sizova v. Nat'l Inst. Of Stds. & Tech*., 282 F.3d 1320, 1326 (10th Cir. 2002).

## X.  Conclusion

For the foregoing reasons, Defendant's Motion must be denied.

Dated: October 20, 2020.                        Respectfully submitted,

<u>s/ Suzette M. Marteny Moore</u>
***Suzette M. Marteny Moore***

Of Counsel to Thomas Bacon, PA
2690 S. Combee Road
Lakeland, Florida 33803
Telephone: (863) 229-2140
E-mail 1: S.Moore@SMooreLaw.com
E-mail 2: Eservice@SMooreLaw.com
Attorney for Plaintiff, Deborah Laufer

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 20, 2020, I filed the foregoing using the Court's CM/ECF e-filing system, which will serve all counsel of record electronically.

s/ Suzette M. Marteny Moore
*Suzette M. Marteny Moore*
Attorney