## UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

Civil Action No.: 1:20-cv-2405-KLM

Deborah Laufer,
      Plaintiff,
v.

2500 ARAPAHOE ST LLC,
      Defendant(s).

---

## PLAINTIFF'S RESPONSE TO DEFENDANT'S
## NOTICE OF SUPPLEMENTAL AUTHORITY

---

Plaintiff, by and through undersigned counsel, hereby submits this Response To Defendant's

Notice Of Supplemental Authority regarding the decision in *Laufer v. Looper, et al.*, 1:20-cv-2475-

NYNW, DE 37 (1/11/2021). In sum, *Looper* followed the minority of courts in holding that a

disabled person who encounters a discriminatory online reservations system ("ORS") only suffers

injury if they had an intent to book a room or otherwise visit the hotel.[1] ("Physical nexus" or "intent

to book" requirement.) For the reasons set forth below, Plaintiff submits that the *Looper* decision

was fundamentally flawed.

1.    ***Looper* Runs Afoul Of The Rules Of Statutory Construction**

First, the *Looper* court (and the minority of courts it followed) violated the rules of statutory

---

[1]These are *Laufer v.Galtesvar OM, LLC*, 2020 WL 7416940, at *5 (W.D. Tex. Nov. 23, 2020)(appeal pending); *Laufer v. Ft. Meade Hosp., LLC*, 2020 WL 6585955, at *4 (D. Md. Nov. 10, 2020)(appeal pending); *Laufer v. Naranda Hotels, LLC*, 2020 WL 7384726 (D. Md. 2020), (appeal pending); *Laufer v. Laxmi & Sons, LLC*, 2020 WL 6940734, 2020 U.S. Dist. Lexis 216752 (N.D.N.Y. Nov. 19, 2020)(motion for certification interlocutory appeal pending), and *Hernandez v. Caesars License Co., LLC*, 2019 U.S. Dist. LEXIS 172456 (D.N.J. 2019).

construction as described by the authorities cited in Plaintiff's earlier brief. They

completely overlooked the fact that the applicable language of the Statute and Regulation are plain

and unambiguous and ignored their duty to apply this language as written. Instead, they added the

requirement of intent.

The *Looper* and minority courts also ignored the fact that a physical nexus or intent

requirement can be readily founded on language in other subsections of the statute. This includes

the "clients or customers" requirement of 42 U.S.C. Section 12182(b)(1)(A), the "from" requirement

of 42 U.S.C. Section 12182(b)(2)(A)(i), and the "because of" language of 42 U.S.C. Section

12182(b)(2)(A)(iii). Thus, it is clear that Congress intended to include nexus and intent requirements

in the subsections where it desired, and that its omission of any such requirements in the subsections

that govern here was deliberate. By inserting an intent requirement into the subsection governing

ORS discrimination, the *Looper* and minority courts ignored the Supreme Court and other

authorities cited in Plaintiff's earlier brief and essentially rewrote the statute.   The Supreme Court

recently reiterated the principle that a court cannot rewrite a statute to its own preference. See

*Bostock v. Clayton Cty.*, 140 S.Ct. 1731, 1738 (2020)("If judges could add to, remodel, update, or

detract from old statutory terms inspired only by extratextual sources and our own imaginations, we

would risk amending statutes outside the legislative process reserved for the people's

representatives. And we would deny the people the right to continue relying on the original meaning

of the law they have counted on to settle their rights and obligations."); *New Prime Inc. v. Oliveira*,

139 S. Ct. 532, 539 (2019)("if judges could freely invest old statutory terms with new meanings, we

would risk amending legislation outside the "single, finely wrought and exhaustively considered,

2

procedure" the Constitution commands.").

**2. The Precedent Followed By The Minority Was Based On A Falsehood**

In imposing a physical nexus/intent to book requirement, the minority courts all followed precedent which began with *Hernandez. Hernandez*, in turn, indicated that it also was following even earlier decisions which stood for the imposition of this requirement. However, this was a fiction entirely of the *Hernandez* court's own creation. At 2019 U.S. Dist. LEXIS 172456, *8-9, the *Hernandez* court indicated that it was following *Juscinska v. Paper Factory Hotel, LLC,*, 2019 U.S. Dist. LEXIS 92550, at *2-3 (S.D.N.Y. June 3, 2019), and *Poschmann v. Coral Reef of Key Biscayne Developers, Inc*., 2018 U.S. Dist. LEXIS 87457 (S.D. Fla. May 23, 2018) for this proposition. However, the *Juscinska* court only noted that the plaintiff had stated an intent to book a room. This falls far short of ruling that such an intent is required. *Poschmann* specifically held that visiting a discriminatory ORS was one valid reason for visiting it: intending to book a room being the other. Thus, the entire precedent followed by the minority was founded on a falsity.

**3. The *Looper* Court Completely Ignored *Havens Realty***

The *Looper* Court also completely overlooked the Supreme Court's decision in *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982). In *Havens Realty*, the Supreme Court held that a person who is deprived of their right to truthful information has suffered injury even if they have no intention of doing anything with that information. The Havens Realty court based its decision on the plain and unambiguous language of the statute. The *Looper* Court addressed this critical decision by ignoring it altogether.

Moreover, the minority cases *Looper* followed refused to apply *Havens Realty* by improperly

attempting to distinguish it.  The first reason cited by the minority courts was their statement that that *Havens Realty* was not about deprivation of the right to information, but was instead about differential and individualized (as opposed to public) treatment. This shows an outright failure to read the plain language of *Havens Realty* and subsequent decisions citing it (referenced in Plaintiff's prior brief), which specifically noted that *Havens Realty* was about the right to truthful information. *Havens Realty*, 455 U.S. at 373-74; *Federal Election Comm'n v. Akins*, 524 U. S. 11, 21 (1998); *Ragin v. Harry Maclowe Real Estate* Co., 6 F.3d 898, 904 (2nd Cir. 1993). See also *Haddad v. Midland Funding, LLC*, 255 F. Supp. 3d 735, 739-40 (N.D. Ill. 2017)("*Havens Realty* turns only on the misleading nature of the representations, not on the racial motivation behind them"). Indeed, many of these cases referred not to specific misinformation directed to a particularized plaintiff, but **public** information. See *Akins*, 524 U.S. at 21 (public information);  *Carello v. Aurora Policemen Credit Union*, 930 F. 3d 830, 832-33 (7th Cir. 2019) (referring to sunshine laws as an example of information that must be disclosed); *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016)(referring to information Congress requires be made "public); *Ragin* (applying principle to newspaper advertisement equally visible to all).

The minority courts, including *Laxmi* and *Hernandez*, both opined that neither *Havens* nor *Houston v. Marod Supermarkets, Inc*., 733 F.3d 1323, 1333-34 (11th Cir. 2013), stood for the proposition that the plaintiff's motions are irrelevant to the issue of injury.  This is a reckless misreading of both case because both *Havens* and *Marod* plainly say otherwise. In *Havens*, the Court specifically stated: "That the tester may have  approached the real estate agent fully expecting that he would receive false information, and without any intention of buying or renting a home, does not

negate the simple fact of injury within the meaning of § 804(d). 455 U.S. at 374. *Marod* contains

a section entitled "Tester Motive Does Not Negate Injury-In-Fact". 733 F.3d at 1332.

The ADA was enacted several years after the *Havens Realty* decision and the operative

language giving the right to sue to "any person" exactly tracks the language relied on by the *Havens*

*Realty* Court. *Marod*, 733 F.3d at 1332-33.; *Civil Rights Educ. & Enforcement Ctr. v. Hosp.*

*Properties Trust*, 867 F.3d 1093, 1101-02 (9th Cir. 2017).   *Colo. Cross-Disability Coalition v.*

*Abercrombie & Fitch Co.*, 765 F.3d 1205, 1211 (10th Cir. 2014); *Tandy v. City of Wichita*, 380 F.3d

1277, 1286 (10th Cir. 2004). For this reason, the Circuit Courts considering the issue followed

*Havens Realty* and expressly held that motive is irrelevant. This includes two decisions in the Tenth

Circuit.

**4.     *Looper* And Other Minority Decisions Overlook Critical Language In *Spokeo* And Credit Union Cases**

The *Looper* and other minority decisions cite *Spokeo* and credit union cases as a basis for

the imposition of an intent/physical nexus requirement. This is flawed for several reasons. First,

*Spokeo* did NOT overturn or otherwise narrow *Havens Realty*.  To the contrary, *Spokeo* stated:

> Just as the common law permitted suit in such instances, the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact. In other words, a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified. See *Federal Election Comm'n v. Akins*, 524 U. S. 11, 20-25 [] (1998) (confirming that a group of voters' "inability to obtain information" that Congress had decided to make public is a sufficient injury in fact to satisfy Article III); *Public Citizen v. Department of Justice*, 491 U. S. 440, 449 [] (1989) (holding that two advocacy organizations' failure to obtain information subject to disclosure under the Federal Advisory Committee Act "constitutes a sufficiently distinct injury to provide standing to sue").

*Spokeo,* 136 S.Ct. At 1549-50.  In the *Akins* decision referenced by *Spokeo*, the Supreme Court, in

turn, referenced *Havens Realty* as follows:

> Indeed, this Court has previously held that a plaintiff suffers an "injury in fact" when the plaintiff fails to obtain information which must be publically disclosed pursuant to a statute..... See also *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-374[] (1982) (deprivation of information about housing availability constitutes "specific injury" permitting standing).

*Akins*, 524 U.S. at 21. Thus, the *Spokeo* Court neither overturned nor narrowed *Havens Realty*, but instead acknowledged the body of law to which *Havens Realty* belongs. Indeed, the concurring opinion in *Spokeo* expressly recognized *Havens Realty*. *Spokeo,* 136 S.Ct. at 1553 (Thomas J., Concurring). *Havens Realty* was also recognized in *Spokeo*'s dissent. 136 S.Ct. At 1555 (Ginsburg, J. Dissenting). In *Macy v. GC Servs., L.P.*, 897 F.3d 747, 754 (6th Cir. 2018), the Sixth Circuit noted that "[a] long line of Supreme Court precedent, cited approvingly in *Spokeo*, supports the conclusion that *Spokeo* did not mean to disturb the Court's prior opinions recognizing that a direct violation of a specific statutory interest recognized by Congress, standing alone, may constitute a concrete injury without the need to allege any additional harm."

Nor did the *Looper* and minority courts' reliance on *Griffin v. Dep't of Labor Fed. Credit Union*, 912 F.3d 649, 653-57 (4th Cir. 2019), *Brintley v. Aeroquip Credit Union*, 936 F.3d 489, 491-95 (6th Cir. 2019), and *Carello* support its conclusion. All three cases involved a vision impaired plaintiff's suit for failure of commercial websites to be compatible with screen reader software. In all three cases, the defendants were closed member credit unions and the plaintiffs were legally barred from availing themselves of the defendants' services. *Looper* and the minority courts all overlooked *Griffin*'s other disclaimer that it was confining its holding to instances where the plaintiff was legally barred from ever availing himself of the defendant's services and was not

considering " the rights generally of people with disabilities to sue for Internet-based harms under

the ADA..." 912 F.3d  at 652, 653 (emphasis added).  *Carello, 930 F.3d at 833,* and Brintley, 936

F.3d at 492, both confined their holdings as being no broader than *Griffin.* Significantly, the *Carello*

Court distinguished itself from the sorts of websites applicable to the case at bar, stating: "Carello

does not complain that the Credit **Union withheld information**...." *Id*. at 835 (emphasis added).

Thus, the *Carello* Court expressly distinguished the statute at issue therein with the type of statute

and regulation at issue herein - which prohibit the withholding of information. Indeed, the *Carello*

Court recognized that informational injury is actionable when the defendant fails to provide

information to a plaintiff that a law entitles him to obtain and review for some substantive purpose.

*Id*. at 835. "Once that occurs, there is no additional requirement that the plaintiff suffer any

additional harm beyond his or her failure to receive the information that the law renders subject to

disclosure. *Id.*, citing *Spokeo*.  Specifically, the *Carello* Court stated:

> An informational injury occurs when the defendant refuses to provide the plaintiff with
> information that a law—typically, a sunshine law—entitles him to obtain  and review for
> some substantive purpose. See, e.g., *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 21, 24-25,
> 118 S. Ct. 1777, 141 L. Ed. 2d 10 (1998) (concluding that voters' inability to obtain
> information subject to disclosure under the Federal Election Campaign Act of 1971 is a
> sufficiently concrete injury); *Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 449, 109
> S. Ct. 2558, 105 L. Ed. 2d 377 (1989) (explaining that, to satisfy Article III's injury
> requirement, advocacy organizations requesting information subject to disclosure under the
> Federal Advisory Committee Act need only show "that they sought and were denied" the
> information); *Casillas [v. Madison Ave., Assoc*., 926 F.3d 329,] 337-38 [(7th Cir. 2019)]
> ("[Akins and Public Citizen] hold that the denial of information subject to public disclosure
> is one of the intangible harms that Congress has the power to make legally cognizable."
> (emphasis omitted)). In such cases, a plaintiff "need not allege any additional harm beyond"
> his failure to receive information that the law renders subject to disclosure. *Spokeo*, 136 S.
> Ct. at 1549.

*Carello*, 930 F. 3d at 833. *Looper* and the minority cases address this additional language in *Spokeo*

and *Carello* by ignoring it entirely. However, two other courts applied this language in recognizing that no physical nexus or intent to book a room requirment can be imposed in ORS discrimination cases. See *Laufer v. Lily Pond*, 2020 U.S. Dist. Lexis 244506 (W.D. Wis. 12/23/2020)*; Laufer v. U.L.S.T., LLC dba Waterfront Hotel & Marina*,2020 U.S. Dist. LEXIS 206417 (N.D.Ill. 11/4/20).

The *Looper* and minority courts failed to adequately address the relatively straightforward interplay between *Havens Realty*, *Akins, Spokeo*, *Griffin* and *Carello*.[2] Under those cases, if the defendant is legally obligated to provide information to the plaintiff or the class of which plaintiff is a member, either publically or privately, then failure to do so gives rise to informational injury even if the plaintiff encountered the information solely for the purpose of filing a lawsuit to challenge its illegality. In *Havens Realty*, for example, the statute required that the defendant was obligated to provide truthful information to black persons, of whom the plaintiffs were members of the class. By contrast, the statute at issue in *Spokeo* (the Fair Credit Reporting Act), required that the defendant provide accurate information to **third party** creditors. There was no legal obligation for the *Spokeo* defendant to provide any information to the *Spokeo* plaintiff. Nor were the *Griffin*, *Carello* or *Brintley* defendants under any legal obligation to provide information to the respective plaintiffs.

Moreover, the operative language of *Havens Realty* and the case at bar ("no person shall", "no individual shall" and "any person") are virtually identical and the courts making this comparison and upholding tester standing (cited in Plaintiff's earlier brief) focused on this plain language. No

---

[2]The court also ignored the vast body of opinions from circuit courts around the country that recognize informational injury.

such operative language existed in the statutes addressed in *Spokeo* or the credit union cases.

The *Looper* and minority courts ignored the fact that, in the case at bar, the Regulation and Statute create a legal requirement for the defendant to provide information to this plaintiff. Whereas the above cases hold that the plaintiff's encounter with a discriminatory ORS constitutes informational injury, with nothing additional required, the imposition of the intent requirement is plainly erroneous. Neither *Spokeo*, nor any of the credit union cases, support the minority courts' disregard of the plain and unambiguous language of the statute.

Additionally, the credit union cases involved compatibility with screen reader software. This is governed by a different subsection: namely, 42 U.S.C. Section 12182(b)(2)(A)(iii) because courts have ruled that failure to be compatible with screen reader software constitutes a lack of auxiliary aid. See *Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 904 (9th Cir.; 2018), *cert. denied*, 140 S.Ct. 122(2019)(applying this subsection to screen reader software discrimination). It is highly significant that this "auxiliary aid" subsection contains a physical nexus requirement that is conspicuously absent from the subsection that governs ORS discrimination - 12182(b)(2)(A)(ii).

**5.     The *Looper* Court Misapplied Tenth Circuit Precedent**

The *Looper* Court also misread *Tandy v. City Of Wichita*, 380 F.3d 1277 (10th Cir. 2004). In this regard, the *Looper* court opined that the *Tandy* plaintiffs had suffered injury because they had intended to make personal use of the defendant's services. To the contrary, *Tandy* specifically followed *Havens Realty* and applied the plain language of the ADA ("no person shall") in holding that testers have standing regardless of whether they intended to use the defendant's services for personal purposes other than to test it for compliance with the law. Indeed, the entire opinion is

replete with indications that the plaintiffs encountered the defendant's discriminatory violations only as testers and without any intention of making personal use of the defendant's services. This included the two testers who encountered informational discrimination.

The *Looper* Court also completely ignored the Tenth Circuit's recent decision in *Colo. Cross-Disability Coalition v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1211 (10th Cir. 2014). There, the defendant had challenged that the disabled plaintiffs did not suffer injury because they were ADA testers. *Id.*, at 1211. The court followed *Marod* and *Tandy*, and applied the plain language of the statute, in holding that "Thus, anyone who has suffered an invasion of the legal interest protected by Title III may have standing, regardless of his or her motivation in encountering that invasion." *Id.*

**6.**     ***Looper*'s Reference to Someday Intentions Is Incorrect**

The *Looper* Court's holding that Plaintiff's stated intent to travel to Colorado to seek lodgings at Defendant's hotel as being insufficient misinterprets the law. First, this hardly compares to *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992), where the plaintiffs had only stated that they some day intended to travel to Egypt to witness the decline of the Nile Crocodile. By contrast, since 2019, Plaintiff has had the intention of taking her grandchild on a nationwide educational excursion by driving from Florida to Maine, then traveling along the northern states all the way to Colorado, then back by southerly route to Florida. She had planned to take this trip during the Summer of 2020, but must now await the passing of the Covid crisis. When that occurs, she will undertake her travels. The *Looper* Court's opinion that this is "speculative" creates an untenable circumstance. First, although the *Looper* Court relied on the *Laxmi* decision, it ignored the part in

10

*Laxmi*'s opinion which held that such a plan was sufficiently concrete and particularized and stated as follows:

> While Plaintiff does not provide an exact timeframe for when she intends to return to New York, it is plausible to infer that this ambiguity is consistent with the uncertainty surrounding when the Covid crisis will end and interstate travel may safely resume.

*Laxmi*,  2020 U.S. Dist. Lexis 216752, at *54.

Indeed, it is certain that Covid crisis and travel restrictions will lift, and Plaintiff's stated intent that she will commence her travels when this happens is concrete. By contrast, if Plaintiff had instead stated that she intended to travel on a certain month, courts would likely hold that this intent was implausible, in light of the uncertainty of when the covid restrictions will subside.

Moreover, the Looper Court's opinion in this regard conveys a misunderstanding of the locus of injury. As recognized in the many cases cited in Plaintiff's brief, the locus of injury is where the plaintiff encounters the discriminatory website and has nothing to do with any visit to the property. In this regard, the Looper court entirely failed to acknowledge Plaintiff's system to ensure that she revisits the ORS of every hotel she has sued both shortly after the complaint is filed and again when the ORS is required to become compliant.

## 7.    Conclusion

For the foregoing reasons, Plaintiff submits that the Looper and minority decisions are flawed.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served via the Court's electronic filing system upon all parties of record this January 15, 2021.

*/s/Suzette M. Marteny Moore*
**Suzette M. Marteny Moore**
Of Counsel, Thomas Bacon PA
2690 S. Combee Road
Lakeland, Florida 33803
(863) 229-2140 (T)
S.Moore@SMooreLaw.com
Eservice@SMooreLaw.com
*Attorneys for Plaintiff*